All right. Well, as I said, case number four has been removed. Case number four, number 163875 Owens against Old Wisconsin Sausage has been removed from today's oral argument calendar, and so we will proceed to case number five, United States against Paige, 1641-28. Mr. Murray. Thank you, Your Honor. Good morning, and may it please the court. My name is Ronnie Murray from the Federal Defender Services of Wisconsin on behalf of Mr. Paige. This case asked the court to resolve two questions. First, may an officer arrest a citizen simply because that citizen smells like marijuana without any marijuana ever being recovered? Second, why is this is simply because there's a lot more than just marijuana here, isn't there? You know, you have him fallen asleep for a significant amount of time in the drive-thru lane, plus the smell of marijuana. Why wouldn't those two facts together present a substantial chance that he was asleep because he was under the influence of drugs or alcohol? Well, I think there's two questions here. I think the odor of fresh marijuana does not support an inference of consumption. What the district court found was that the odor of fresh marijuana gave the officer probable cause to arrest him for possession of marijuana. Now, the other question I'm asking the court to resolve is whether falling asleep in one's vehicle in a drive-thru lane, stationary, creates probable cause to arrest that citizen without other indicators of impairment and without administering any field sobriety tests. But you know, I guess the way I approached this case is prior to any arrest that happens, the officer comes because an employee of McDonald's has called. It's very late at night. It's approaching one o'clock in the morning. And this odor of fresh marijuana is there. And we're supposed to follow a circumstances test for these various encounters. I don't know why there wasn't at least reasonable suspicion that something was amiss, whether it was possession of marijuana, whether it was operating a vehicle while impaired, to justify the pat-down, a Terry Frisk, basically. And once the pat-down happens, the officer finds the gun. He admits that he doesn't have a concealed carry permit and seems to me the jig's up. Well, I certainly concede that the officer had reasonable suspicion to investigate the scene. That inquiry is separate and distinct from whether there was reasonable suspicion to believe Page was armed and dangerous, thereby warranting the Terry Frisk. But officers are allowed to do a brief stop and frisk for officer safety. And I'm just painting the surrounding circumstances, very late at night, where they are, the officers by herself at that point, sure looks like a Terry Frisk to me. It was a Terry Frisk, I agree. Even the officer herself didn't justify the search as incident to arrest like the district court later did. Her stated justification was to look for guns or drugs before she placed Mr. Page in the back of her vehicle to investigate. Exactly, because she can smell the marijuana. And she knows that he's been shipping for an hour in the McDonald's drive-thru, really. Officers are not automatically allowed to frisk every person at Terry's stop. There's an additional inquiry that has to take place. Under the totality of the circumstances, our position is no, that these facts are not a support and inference that he was dangerous. When she arrived to the scene, he was entirely cooperative with the fire captain. He was responsive. He wasn't acting aggressive, belligerently. He didn't make any furtive gestures. He didn't try to run. The fire captain himself who responded to the scene assessed it and realized that this person did not need any medical attention and he felt certainly just comfortable leaving the officer alone with Mr. Page. He didn't ask her whether she wanted their presence to remain. Ms. Page, excuse me, the officer herself didn't call for backup before she approached Mr. Page. I think officers sometimes come into a habit or routine of simply patting down everyone at Terry's stop, but Terry does not allow that. These facts here, his cooperation, the lack of any other, you know, factors that would indicate that he was dangerous. She didn't notice a bulge. You know, he said he was sleeping. He answered her questions. Whether she believed him may be a different story, but nothing supports the inference that she was in danger. Yeah, she says she thought he was lying, didn't she? That doesn't make him dangerous. He was sleeping and whether she believes him is subjective. He was asleep. There's no denying that. Whether that was his sole cause was left to be investigated and that's what she should have done. In fact, she herself... What about the drugs? Why isn't that enough to make one dangerous? The odor of marijuana does not make one dangerous at all, and as we argued in the briefs, and the government often does, the inference that it's too far of a leap to presume that because someone smells like marijuana that they are probably armed and probably dangerous and probably threatening. That just defies common experience, so I don't believe that fact supports an inference that this person was dangerous or presented any danger to anyone involved. She responded to a sick or injured person called. Completely innocuous situation. She went there to offer assistance, not to you know, you've got someone who was so soundly asleep in the drive-thru lane that he had to be awakened by the emergency responders. That's very... Don't you think that's unusual? Certainly, and I certainly think that observation warranted further investigation. The Terry stop. We're not challenging that. We're entirely appropriate for her to approach Paige, to question him, and to administer field sobriety tests, which she did not do, but simply arresting him, going straight from falling asleep to arrest, is too far a leap to make. This is why field sobriety tests... Something intervening, and that is the strong smell of marijuana. Strong smell of fresh marijuana, which again, from our position is that does not support an inference of consumption. That basis was used... It certainly supports an inference of possession, and Wisconsin is not one of those states that has legalized yet. It does, but I don't think it rises to the level of probable cause to arrest when no marijuana has been recovered at that point. Marijuana has a very distinctive and pungent smell, so I don't know why, if the officer smells it that strongly, she doesn't logically, as a drug offense is. She thought she was going to help a sick or injured person, but all of a sudden she walks into the middle of a drug offense. The smell can travel, and the smell can linger, and smelling like marijuana does not necessarily mean that one possessed it. As this case is evidence of, she smelled marijuana, if we credit her observation from him. He had no marijuana on him. It was in the vehicle. I think that demonstrates that proximity alone is enough to contract the smell of marijuana, and taking a citizen and against the Fourth Amendment, the protections that it affords us. So, that's our position. Now, the district court also didn't reach the question of whether, as this court asked, it was reasonable to believe that Page was armed and or dangerous. As I mentioned, Officer Sheets Walker herself did not decide to arrest Page until she recovered the firearm that was the product of the search. I think this suggests that even Officer Page didn't believe she had probable cause to arrest him until she recovered that gun, and given the facts of this case, nothing suggests that Page presented a risk of harm or danger to that person. Yes, it's late in the morning. So, you haven't said anything about the neighborhood. That's another thing they've brought up. I mean, they're, we'd be putting our head in the sand not to realize that there are certain neighborhoods where violence is more prevalent, where guns are more prevalent. That's true. I don't think this record necessarily supports that, and I think it's, quite frankly, unfair to reduce the Fourth Amendment protections for people found in these areas simply because their surroundings might have in the past be attributed to crime. That has nothing to do with Mr. Page, and people simply passing through these neighborhoods are not, I think, protected by relaxed constitutional protections. So, while that may factor into the totality of the circumstances, that by itself, nor with the other observations that she observed, specifically his cooperation. He did nothing whatsoever to raise an eyebrow that this person is dangerous. He's sleepy. I think that falls on the than one who was probably more, let's say, alert, or, you know, active, or maybe belligerent, argumentative. None of those things were here. So, while, again, I do think that's a fact that warrants consideration within the totality of the circumstances. In this case, I don't think it tips the scale to find that it was reasonable to believe that he was a danger to anybody. Okay. Thank you. I'll reserve. it. That's fine. Mr. Kruger. May it please the court. Matthew Kruger on behalf of the United States. This case is not about the smell of marijuana standing alone, as the defendant has asked of him. Indicate there are several other factors here which supported a finding of probable cause as to the possession of marijuana, or operating while under the influence, which would support a subsequent search incident to arrest. Those factors include... So, is that what you need? You need... Do you think your strongest case is probable cause to think that the drug offense, the marijuana offense, has occurred, thus a search incident to an arrest? Of course, the or do you think that there was enough all by itself? I mean, I think it's a thin record on just, unless there's some rule that the police can just frisk everybody who's walking through certain neighborhoods. Do you think that this pat down, it can be sustained independently? I do think there's enough to find this as a justified Terry frisk. I do think the more straightforward and very solid ground for affirming would be probable cause, which the district court found. And that follows both from the fact that this court's cases have said repeatedly that probable cause follows from a distinctive odor of marijuana. In cases like Peters and Mosby, this court has repeatedly affirmed the search of a vehicle based on marijuana, which gives, as your honor's question indicated, a distinctive enough smell to think that marijuana is in a certain place. And the court has then applied that principle to finding probable cause to arrest somebody in the Williams case. And so to not follow that here would be to suggest, as I think the defendant is asking, that there are different probable cause standards for arrest versus search. And that is not supported by anything in case law. And so you have this very solid line of cases that says a strong smell of marijuana located to a certain place is probable cause, just a substantial chance. Just on the possession offense. I mean, it couldn't really be for anything else since it's the smell of fresh marijuana, not burnt. I think that's right, although I would note that in cases like Peters, in Peters what the officer smelled was burnt marijuana. And the court said that was probable cause to think that there would be marijuana there in the car. And so the court has not really tried to finally parse burnt versus fresh, because it makes sense that if one has burned it, it likely was there and some may still be there. Probable cause is certainly less than a preponderance of an evidence, of the evidence standard. So you have that line of cases and then you add to it the conduct that the officer found here. You have where this person, Mr. Page, was falling asleep for some period of time in a drive-thru lane, where one would ordinarily be very alert, getting ready to place an order, paying attention to whether the car in front of him had moved or not. He'd also been there for a substantial period of time, had been there for a... Not sure what that is. There's a bit of an echo. I'm not sure of what it is either, but just if you can continue. Certainly. So again, where he was, where he had fallen asleep, how long he had fallen asleep, and then his demeanor, which she observed afterwards. She described it as somewhat sleepy, eyes were low, seemed evasive in the questioning, not wanting to say anything, perhaps because he knew that he was trying to conceal wrongdoing. And so you have those additional facts here that when combined with cases like Peters, Mosby, and Williams, gives this court a very solid ground to say that there was probable cause to arrest. I think just as easily the court could affirm based on inevitable discovery. If you take a step back and think about the sequence here, she arrived and very soon, upon approaching the vehicle, detected a strong smell of marijuana, both from the vehicle and... From the vehicle itself, yeah. From the vehicle also. And that's important here to recognize, to sort of acknowledge the factual setting, the factual posture of this case, in that there has been a waiver of any challenge to the finding of facts as to the smell that was found. There was an evidentiary hearing, the magistrate judge made findings... She keeps referring to it as a skunky smell. A skunky smell. The officer does. That's right. There was a very serious foundation laid about her... Pages about her experience with marijuana. She definitely knew marijuana, not from smoking it, but having observed it. And so the court reasonably made a factual finding at the appendix, page 14. The court finds that the officer did smell fresh marijuana coming from Page and his vehicle. There's no objection to that from the magistrate judge's finding. And so that's the finding here on appeal. And so, again, considering the sequence, she undoubtedly, even if she had not frisked him, would have further investigated the car to see what was the cause of his impairment or why there was that odor of marijuana coming from the car. And so even if there had never been a frisk here, this record is very solid to say that she would have inevitably approached the car, smelled marijuana, and under cases, again, like Peters and Mosby and others, she had probable cause to search the car at that point. So you were also saying, were you not, that as she approaches the car, once she makes the decision that she wants to put Page in the back of the police vehicle, she needs to frisk him anyway? I'm trying to remember that part of the argument. Under our second argument, under the Terry stop part of it, when she makes that decision, because she's alone and plans to not have him just standing there as she would go run his name in a record or approach the car again, I believe by the transcript of the evidentiary hearing, you'll see that the car was actually still operating. Right, she has to turn it off. And it needs to be transported by somebody other than Mr. Page, certainly. And so she needs to detain him and it's very reasonable given that she has to come in such close proximity to him to ensure for her safety that he doesn't have a weapon on him at that point. So this case is different in that regard than Terry itself, where the officer was just engaging in a citizen on a sidewalk and a few questions may have dispelled the suspicion and the person could have gone on his way. Here, Mr. Page was not going to be allowed to just go on his way. The officer needed to keep acting. And so that increases the likelihood that he could have gone on his way. If there are no other questions, I'd ask the court to affirm the decision below. All right, thank you. Anything further, Mr. Murray? Yes, thank you. I think the importance here is that the position advocated by the government allows citizens to be arrested without any marijuana ever being recovered. Now, while there may not be much case law to support that the probable cause standard is different for a search than it is for an arrest, the interest is different. It's a liberty interest versus a privacy interest. So I think it requires greater deference. And, of course, the search, probable cause to search, is intended to find the basis for the subsequent arrest. Under this scheme, they never need to find any. Under the government's theory, for example, the officer could have walked up to the vehicle, smelled marijuana, never searched it, never taken any more steps to investigate, and taken Page to jail for that. The Fourth Amendment doesn't allow that. Finally, when it comes to inevitable discovery, there is simply no basis in the record to conclude that it would have inevitably been discovered. We are simply speculating, and I don't think it's possible to divorce the government's proposed inevitable discovery from the tainted act. As soon as she searched him, she lacked a viable basis to do so, and she arrested him based on the fruits of that search. For that reason, those fruits should be suppressed. Where did they find the gun? On his person. On the person. Yes. The back of his waistband? Correct. And it had a round chambered, as I recall. It was fully loaded, and I believe the record shows that there was one round that was chambered. I don't know that that's material to the analysis. What it also highlights is the lack of investigation that she should have taken. She didn't even ask him if he was armed. She just went straight to that. Terry requires some sort of investigation, a brief detention to ask some questions. That didn't happen here. She just searched him right away and recovered a gun. We are asking this court to reverse the district court's denial of Mr. Page's suppression motion and remand for the proceeding. Thank you. All right. Thank you. Thanks to both counsel. We'll take the case under advisement.